**Certiorari Granted, March 16, 2017, No. S-1-SC-36307**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2017-NMCA-034**

**Filing Date:  January 24, 2017**

**Docket No. 34,667**

**STATE OF NEW MEXICO,**

 **Plaintiff-Appellant,**

**v.**

**ARMANDO NAVARRO-CALZADILLAS,**

 **Defendant-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellant

Garcia Ives Nowara
Zachary A. Ives
Molly Schmidt-Nowara
Albuquerque, NM

for Appellee

**OPINION**

**HANISEE, Judge.**

**{1}** The State appeals from the district court's April 2, 2015 order granting Defendant Armando Navarro-Calzadillas's motion to exclude witnesses. Because this matter is

1

governed by the special calendar portion of LR2-400 NMRA (2014)[1], the case management pilot rule in the Second Judicial District Court (the local rule), *see* LR2-400(L) (2014); LR2-400.1 NMRA, and given this Court's concerns with reconciling the requirements of the local rule with Supreme Court precedent that places limitations on the district court's discretion, we certified this matter to our Supreme Court. The Supreme Court quashed certification and directed our attention to specific language contained in LR2-400(A) (2014), adding that "the Court is confident that the Court of Appeals is fully capable of applying this Court's textual direction in . . . that prior procedural precedents apply to cases governed by the [local] rule only 'to the extent they do not conflict with' [the local rule.]" Having now examined applicable provisions of the local rule alongside the clear directives of *State v. Harper*, 2011-NMSC-044, ¶ 16, 150 N.M. 745, 266 P.3d 25 (requiring a trial court's consideration of lesser sanctions in certain circumstances), we reverse.

**BACKGROUND**

**{2}** Defendant was indicted on March 19, 2014, on charges of criminal sexual penetration in the first degree and criminal sexual contact of a minor in the third degree. On April 11, 2014, Defendant was arraigned and released on his own recognizance. A status conference was held on December 8, 2014, and case-related deadlines were set. Although no formal scheduling order was issued, the parties agree that the pretrial witness interview deadline was February 13, 2015.

**{3}** On February 24, 2015, the State filed a motion to extend the pretrial witness interview deadline until March 13, 2015. The State asserted that it had good cause in seeking additional time, given the late disclosure of the name of the alleged victim's therapist and difficulties scheduling witness interviews. The district court, however, denied the State's motion, concluding that no good cause existed to extend the district court's previously scheduled deadline.

**{4}** Following the district court's ruling, Defendant filed a motion to exclude witnesses. According to the allegations contained in Defendant's motion to exclude, defense counsel had asked the prosecutor about setting up witness interviews at a status conference on August 27, 2014, and via e-mail on October 28, 2014, November 6, 2014, and November 11, 2014. On November 12, 2014, the prosecutor responded that he still needed to talk to the alleged victim and her parents about the case. The parties met on November 21, 2014, and defense counsel asserts that she then, again, requested interviews.

**{5}** Shortly thereafter, interviews were scheduled to take place on January 15, 2015. Interviews of the two investigating officers were planned for the morning, and the alleged victim's family members were to be interviewed at 3:30 p.m. One of the officers was

---

[1]Pursuant to Supreme Court Order No. 16-8300-015, former LR2-400 (2014) was recompiled and amended as LR2-308 NMRA, effective December 31, 2016.

interviewed that morning; the other officer did not appear for the interview due to illness. Because the alleged victim's family members were running late and defense counsel indicated she could not wait long, the afternoon interviews were cancelled. The alleged victim was not scheduled to be interviewed on January 15, 2015.

{6}     Interviews were rescheduled for February 12, 2015, based on the alleged victim's father's availability, which was limited to Thursday afternoons. Defense counsel did not appear for the scheduled interview of the remaining officer and asserted that the interview had been improperly calendared at her office. While the interviews of the alleged victim's family occurred that afternoon, an interview with the alleged victim had still not been scheduled. The deadline to complete witness interviews was the following day. The State filed its above-mentioned motion to extend the deadline for completing the witness interviews, which the district court denied. Acting pursuant to the special calendar rule, and given that witness interviews were not complete, the district court granted Defendant's motion to exclude those witnesses that had yet to be interviewed. The State appeals.

**DISCUSSION**

{7}     The State raises three issues on appeal relating to the district court's exclusion of its witnesses. To resolve this appeal, this Court must reconcile any conflicts between the provisions of the special calendar rule and pre-existing case law governing the district court's discretion in excluding witnesses. For the purpose of this opinion, we assume without deciding that the textual directive contained in the special calendar rule can do what it purports to do and overcome existing and conflicting case law on criminal procedure.[2] We therefore begin with a discussion of the requirements of the special calendar rule, and then turn to restrictions on the district court's exercise of discretion established by case law, before determining whether a conflict exists.

**I.     Special Calendar Rule**

{8}     The local rule creates clear and limited time frames for the progression of criminal cases in the Second Judicial District Court. The provisions of the local rule, which was amended in 2016, *see* LR2-400 NMRA (2014) (recompiled and amended as LR2-308 NMRA), require that cases filed in the Second Judicial District Court after June 30, 2014, are subject to the requirements of the local rule, while cases filed on or before June 30, 2014,

---

[2]We note that the case management pilot rule that was promulgated by the Supreme Court contains an identical provision, stating that existing case law on criminal procedure continues to apply barring some conflict with the local rule. Here, the special calendar rule was promulgated by the Second Judicial District Court, and while our district courts would not generally possess such authority, the special calendar rule was promulgated at the direction of, and largely tracks, the case management pilot rule enacted by Supreme Court order.

are placed on a special calendar. *See* LR2-400(L) (2014). The time frames and requirements of the special calendar were established by an order of the Second Judicial District Court and are found in LR2-400.1. Given that Defendant was indicted on March 19, 2014, this case is subject to the requirements of the special calendar rule. *See* LR2 400(L) (2014). While the special calendar rule tracks, in large part, the provisions of the local rule, LR2-400.1 contains some notable distinctions for dealing with older, and perhaps more complex, cases.

## A.    Discovery Provisions

**{9}**    Pursuant to the special calendar rule, the parties are required to make available all discovery required by Rule 5-501(A) NMRA within ten days of the February 2, 2015 effective date for the rule, unless already disclosed. LR2-400.1(D). In addition to disclosures required by Rule 5-501(A), the parties are required to provide "phone numbers and e-mail addresses of witnesses if available, copies of documentary evidence, and audio, video, and audio-video recordings made by law enforcement officers or otherwise in possession of the state, and a 'speed letter' authorizing the defendant to examine physical evidence in the possession of the state." LR2-400(D)(1) (2014). The special calendar rule defines evidence in possession of the state to include "[e]vidence in the possession of a law enforcement agency or other government agency[.]" LR2-400.1(D)(3). The special calendar rule allows a party to request to "withhold specific contact information if necessary to protect a victim or a witness." LR2-400.1(D)(1). However, "the party seeking the order shall arrange for a witness interview or accept at its business offices a subpoena for purposes of deposition[.]" LR2-400.1(D)(1). Pursuant to the special calendar rule, the district court *must* impose sanctions for discovery violations. LR2-400.1(D)(4) ("If either party fails to comply with any of the provisions of this section, the court *shall* impose sanctions, which may include dismissal of the case with or without prejudice, prohibiting the party from calling a witness or introducing evidence, monetary sanctions against either the attorney or the attorney's agency, or any other sanction deemed appropriate by the court." (emphasis added)).

## B.    Deadlines and Extensions

**{10}**    Pursuant to the special calendar rule, the deadlines for cases are established by a scheduling order that takes into consideration the following: "the complexity of the case"; "whether the defendant is in custody, provided custody weighs in favor of shorter deadlines, regardless of the complexity of the case"; "length of time the case has been pending"; "whether the case is presently ready for trial"; and "the availability of trial dates on the [c]ourt's docket." LR2-400.1(I)(3). A scheduling conference is required to be held within 120 days of the special calendar rule's February 2, 2015 effective date, LR2-400.1(I), and a scheduling order is required to be entered within ten days of the scheduling conference. *See* LR2-400.1(J). Because the special calendar governs cases that were pending for over seven months prior to enactment of the rule, the special calendar rule contains a provision that allows the parties to stipulate to a previously entered scheduling order or to submit a stipulated scheduling order for approval by the district court. *See* LR2-400.1(J)(1). The deadlines contained in the scheduling order can be extended "[f]or good cause shown . . . for

a period of twenty . . . days, so long as the extension does not result in an extension of the trial date." LR2-400.1(J)(3). "If a party fails to comply with any provision of the scheduling order, the court *shall* impose sanctions as the court determines is appropriate in the circumstances, such as suppression, exclusion, dismissal, monetary sanctions against either the attorney or the attorney's government agency, or any other sanction deemed appropriate by the [c]ourt." LR2-400.1(J)(4) (emphasis added). An extension of the trial date of no more than forty-five days is only permitted upon a "showing of good cause which is beyond the control of the parties or the court." LR2-400.1(P). Any further extensions must be supported by exceptional circumstances and approved by the chief judge of the Second Judicial District Court; otherwise, if the trial cannot be held on the date scheduled, dismissal with prejudice is required. *See* LR2-400.1(P).

## II.    Limitations on the District Court's Exercise of Discretion

{11}    As noted above, the special calendar rule requires sanctions for violations of discovery obligations, *see* LR2-400.1(D)(4), and violations of deadlines established in the scheduling order, *see* LR2-400.1(J)(4). While sanctions are mandatory under the special calendar rule, the type of sanction is left to the discretion of the district court judge to determine what is appropriate in the given circumstance. Although the special calendar rule provides examples of the type of sanctions available, including the exclusion of witnesses, our New Mexico Supreme Court has placed limitations on the district court's ability to exclude witnesses absent clear criteria.

{12}    In *Harper*, our Supreme Court held that "the exclusion of a witness is improper absent an intentional refusal to comply with a court order, prejudice to the opposing party, and consideration of less severe sanctions[.]" 2011-NMSC-044, ¶ 15. In reaching this determination, our Supreme Court noted that "[a] court has the discretion to impose sanctions for the violation of a discovery order that results in prejudice to the opposing party" but that "[e]xtreme sanctions such as dismissal are to be used only in exceptional cases." *Id.* ¶ 16 (internal quotation marks and citation omitted). Our Supreme Court pointed out that "[t]he trial court should seek to apply sanctions that affect the evidence at trial and the merits of the case as little as possible." *Id.* (alteration, internal quotation marks, and citation omitted). Moreover, our Supreme Court stated that "the refusal to comply with a district court's discovery order only rises to the level of exclusion or dismissal where the [s]tate's conduct is especially culpable, such as where evidence is unilaterally withheld by the [s]tate in bad faith, or all access to the evidence is precluded by [s]tate intransigence." *Id.* ¶ 17. And, that "even when a party has acted with a high degree of culpability, the severe sanctions of dismissal or the exclusion of key witnesses are only proper where the opposing party suffered tangible prejudice." *Id.* ¶ 19; *see id.* ¶ 16 (stating that "[p]rejudice must be more than speculative; the party claiming prejudice must prove prejudice—it is not enough to simply assert prejudice"). Finally, our Supreme Court stated that "prejudice does not accrue unless the evidence is material and the disclosure is so late that it undermines the defendant's preparation for trial." *Id.* ¶ 20. Therefore, to reiterate, *Harper* requires that in order for the district court to exclude material witnesses there must be: (1) "an intentional

5

refusal to comply with a court order," (2) "prejudice to the opposing party," and (3) "consideration of less severe sanctions[.]" *Id.* ¶ 15. It is the latter requirement on which we focus our attention herein.

## III.    No Conflict Exists Under Specific Facts of This Case

**{13}**    Having considered the provisions of the special calendar rule and the requirements of *Harper*, we conclude that under the facts of the present case no conflict is presented and, therefore, *Harper* still limits the district court's ability to exclude witnesses. In reaching this determination, we do not disregard the special calendar rule's requirement that sanctions be imposed for failure to comply with the time requirements of the special calendar rule. *See* LR2-400.1(J)(4). However, we note that a lesser sanction was still available to the district court—namely, dismissal without prejudice. Thus, we conclude that when the district court has a course of action before it that allows it to choose a sanction other than exclusion of witnesses that will still remedy the violation and, therefore, comply with the special calendar rule, under those circumstances a conflict between the special calendar rule and *Harper* does not exist.

**{14}**    Defendant contends that the conflict between *Harper* and the new case management provisions runs much deeper, as the two represent fundamentally different approaches. Defendant argues that "[b]y requiring sanctions for every discovery violation . . . the special calendar rule conflicts with *all* statewide rules of criminal procedure and existing case law." (Emphasis added.) Defendant points out that prior to the implementation of these new case management rules in the Second Judicial District Court, the imposition of sanctions was discretionary, and the exercise of that discretion was curtailed by "rigid" case law. Defendant contends that the special calendar rule is intended to be much more flexible and provide the district court with broader discretion in imposing sanctions.

**{15}**    While Defendant offers one interpretation of the breadth of the case management provisions found in the local rule and special calendar rule, we decline to take such an approach in reconciling the new requirements in the Second Judicial District with prior case law. In applying the textual directive contained in the local rule and LR2-400.1(A), we remain acutely aware of our role as an intermediate appellate court. When we must choose between an approach that would upend Supreme Court case law, such as *Harper*, and possibly, as Defendant argues, "*all* statewide rules of criminal procedure and existing case law," and an approach that allows us to continue to apply both Supreme Court precedent and the new case management provisions, in an abundance of caution we will choose the latter. (Emphasis added.) Thus, we interpret the special calendar rule's use of broad strokes in discussing sanctions to allow for the continued application of *Harper* where a lesser sanction can still remedy the prejudice caused by the failure to comply, rather than declare *Harper* inapplicable in only the Second Judicial District Court.

**{16}**    Because we conclude that *Harper* still applies under the circumstances of this case, we also hold that the district court abused its discretion in excluding witnesses without first

ensuring that the *Harper* criteria were met. Defendant reminds us that our review of the district court's imposition of sanctions is for an abuse of discretion, and that, in order to reverse, we must conclude that the district court's sanction order was "clearly against the logic and effect of the facts and circumstances of the case" and "clearly untenable or not justified by reason." *See Wilde v. Westland Dev. Co.*, 2010-NMCA-085, ¶ 30, 148 N.M. 627, 241 P.3d 628 (internal quotation marks and citation omitted). Defendant reminds us also that this is a highly deferential standard and that we presume correctness in the district court's rulings. While Defendant is correct in his recitation of our standard of review, *Harper* makes clear what constitutes an abuse of discretion in this context. 2011-NMSC-044, ¶ 27 ("Under the circumstances of this case, failure to impose a less severe sanction, together with the lack of any proof of prejudice to [the defendant] or an intentional refusal to obey the district court's discovery directive, constituted an abuse of discretion."). According to *Harper*, "exclusion of witnesses *requires* an intentional violation of a court order, prejudice to the opposing party, and consideration of less severe sanctions[.]" *Id.* ¶ 2 (emphasis added). Given that the district court did not ensure that these criteria were met, we conclude that the district court abused its discretion. *See N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450 ("[W]e may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." (alteration, internal quotation marks, and citation omitted).

**{17}** Finally, while we rely on the availability of dismissal without prejudice as a means by which the district court may remedy the harm caused by the state's failure to comply with the requirements of the special calendar rule, and adhere to *Harper*, we have not concluded that this is the only course of action available to the district court. We therefore reverse the district court's order excluding witnesses because the district court does not appear to have considered the *Harper* criteria in rendering its decision, but leave open the possibility under *Harper* that the district court may—under the facts of this case—fashion an appropriate lesser sanction that remedies the harm caused by the state's action and acts to deter future violations by the state—which may include, among other possibilities, dismissal without prejudice.

**{18}** Defendant asserts that dismissing the case without prejudice as a sanction results in additional prejudice to Defendant because it "start[s] the entire process over from the beginning with yet another grand jury proceeding, likely followed by pretrial discovery and motion practice." Defendant also asserts that utilizing dismissals without prejudice as a sanction, rather than exclusion, will provide an incentive for prosecutors to miss deadlines in an attempt to get a new judge or in an attempt to get more time. We note, however, that upon refiling the district court may issue a scheduling order that provides for even less time than that allotted under LR2-400 to complete discovery and pretrial motions. *See* LR2-308(G)(5) ("Additional requirements may be included in the scheduling order at the discretion of the assigned judge and the judge may alter any of the deadlines described in Subparagraph (G)(4) of this rule to allow for the case to come to trial sooner."). Thus, given the short time constraints of the local rule and the ability of the district court to make those time constraints even shorter, it is possible for cases to be dismissed without prejudice,

7

reindicted, and tried in less time than cases that were prosecuted prior to the enactment of the local rule— satisfying both the purpose of the local rule and allowing defendants to still avoid oppressive delay. To the extent Defendant contends that prosecutors will use dismissals without prejudice to their advantage—to procure more time or a different judge—prosecutors would be well-advised to avoid such behavior. Not only would this establish intentional bad faith conduct on the part of the prosecutor and satisfy at least one of the *Harper* criteria, but "[i]f the case has been re-filed following an earlier dismissal, dismissal with prejudice is the presumptive outcome for a repeated failure to comply with th[e] rule[.]" LR2-308(I)(2). Thus, given the extreme restrictions on continuances contained in the local rule, a dismissal without prejudice would permit new deadlines to be established, allowing Defendant the opportunity to still have meaningful process by interviewing the witnesses against him, while still serving as a warning to the State that further failures to adhere to the requirements of the local rule may result in the State being barred from prosecuting Defendant.[3]

**{19}** Based on the foregoing, we reverse the district court's order excluding witnesses and remand for consideration of the *Harper* criteria and imposition of an appropriate sanction.

**{20}    IT IS SO ORDERED.**

_____

**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Chief Judge**

_____

**JULIE J. VARGAS, Judge**

---

[3]We note that this avenue is curtailed to some degree by the revisions to the local rule. *See* LR2-308(I)(4) (prohibiting the sanction of dismissal, with or without prejudice, where "the state proves by clear and convincing evidence that the defendant is a danger to the community" and "the failure to comply with th[e] rule is caused by extraordinary circumstances beyond the control of the parties").